UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| HEATHER GUNN, | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:24-CV-0053-AAQ |
| JPMORGAN CHASE BANK, N.A., | * | |
| Defendant. | * | |

## MEMORANDUM OPINION AND ORDER

This is a case concerning a bank's sharing of allegedly inaccurate information about a woman's debt to credit reporting agencies. Plaintiff, Heather Gunn, alleges that Defendant, JPMorgan Chase Bank, N.A. ("Chase"), failed to disclose complete and accurate information about her credit card debt, harming her as a consumer. She alleges these actions constitute a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1601 *et seq.*, and defamation. Pending before the Court is Chase's Motion to Strike one of Ms. Gunn's filings, ECF No. 34, and Chase's Motion to Dismiss this case, ECF No. 24. For the reasons discussed below, the Court will grant the Motion to Strike and deny the Motion to Dismiss.

## BACKGROUND

At some point, Ms. Gunn obtained a credit card from Chase, a large and well-known bank with numerous credit card offerings.[1] ECF No. 21, at 1. In 2020, Ms. Gunn "fell behind" on payments to several creditors—including Chase—due to her divorce. *Id.* In August 2021, Chase

---

[1] The Court draws the following facts from Ms. Gunn's Complaint, accepting all well-pled allegations as true for purposes of deciding Chase's Motion to Dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

"charged off" Ms. Gunn's credit card account, meaning it closed the account and wrote it off as a loss after determining it was uncollectable. *Id.*; *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 146 n.2 (4th Cir. 2008).

In February 2022, Chase sued Ms. Gunn seeking to recover the debt she owed on the credit card account. ECF No. 21, at 1. That same year, Ms. Gunn retained a debt payoff company to negotiate payment plans with her creditors. *Id.* at 1-2. The company helped her reach an agreement with Chase, pursuant to which the parties entered a consent judgment that ended Chase's lawsuit. *Id.* at 2. Since then, Ms. Gunn has complied with the terms of the agreement, making timely payments for over eighteen months towards her debt with Chase. *Id.* Nonetheless, Chase has continued to report to various Credit Reporting Agencies that Ms. Gunn's account is charged off. *Id.* Additionally, Chase has not disclosed the payment agreement or that Ms. Gunn has made payments towards the account. *Id.* at 2-3. According to Ms. Gunn, her payments should have been memorialized in several standard fields of a credit report including, among others, monthly payment, last payment, and actual amount paid. *Id*.

Ms. Gunn subsequently disputed Chase's report with the CRAs, who in turn notified Chase of her complaint. *Id.* at 2. In response, Chase "processed [Ms. Gunn]'s dispute quickly and in a cursory manner," only cross-checking her credit report with its own internal records. *Id.* at 3. When Chase concluded its review of Ms. Gunn's account, it notified the CRAs that its previous reports were accurate and "did not need to be modified or deleted." *Id.* Chase did not update its report to reflect the payment agreement or any of Ms. Gunn's recent payments. *Id.* Since her initial dispute, Ms. Gunn has continued to raise this issue with Chase and the CRAs. *Id.* She believes Chase's characterization of her account status is "inaccurate and incomplete." *Id.* Chase meanwhile continues to instruct the CRAs that they need not modify any aspect of the report. *Id.*

On December 20, 2023, Ms. Gunn filed this lawsuit *pro se* in the Circuit Court for Montgomery County, Maryland alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1601 *et seq*. (Count I), and defamation (Count II) arising out of Chase's reporting to CRAs.[2] ECF No. 1-2, at 2-6.  The next month, Chase removed the case to this Court.  ECF No. 1.  Judge Theodore D. Chuang held a case management conference on January 24, 2024, after which Chase filed a Motion to Dismiss.  ECF Nos. 10, 13.  When Ms. Gunn failed to timely respond, Chase requested that the Court grant its Motion to Dismiss as unopposed.  ECF No. 15.  A few days later, Jeffrey W. Styles entered an appearance on behalf of Ms. Gunn and filed a Motion for Leave to File an Amended Complaint.[3]  ECF Nos. 16, 17.  The Court granted the Motion to Amend and denied Chase's Motion to Dismiss as moot.  ECF No. 20.

Chase filed the present Motion to Dismiss on March 22, 2024; since then, it has been fully briefed.  ECF Nos. 24, 28, 31.  In May 2024, several weeks after the parties completed briefing, Ms. Gunn filed a Supplement to her Opposition and attached several supporting materials including a personal affidavit.  ECF Nos. 32, 33.  Chase subsequently filed a Motion to Strike the Supplement, to which Ms. Gunn did not respond.  ECF No. 34.

**STANDARD OF REVIEW**

---

[2] Ms. Gunn initially brought suit against Chase and Capital One Financial Corporation.  ECF No. 1, at 1.  Capital One Financial Corporation was dismissed from the suit on March 21, 2024. ECF No. 20, at 2.

[3] During the March 2024 case management conference, Mr. Styles stated that Thomas Alston, a prolific litigant in this Court, has been involved with the case.  ECF No. 24-1, at 1 n.1; *Alston v. Orion Portfolio Servs., LLC*, No. 16-CV-3697, 2017 WL 784122, at *1 n.1 (D. Md. Mar. 1, 2017) (describing Mr. Alston's history of litigation).  Mr. Alston has filed many FCRA cases in this Court—in his own name and by family members.  *Miller v. Trident Asset Mgmt., LLC*, No. 18-CV-2538, 2019 WL 6528610, at *3 (D. Md. Dec. 4, 2024).  While the Court notes Mr. Alston's involvement, it does not impact the analysis that follows.

Fed. R. Civ. P. 12(b)(6) provides that a party may move to dismiss where a plaintiff "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the plaintiff has plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "draw[] all reasonable factual inferences . . . in the plaintiff's favor." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017). The plaintiff must provide more than "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and mere legal conclusions are not "entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss, the Court may only consider the facts as alleged in the complaint. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court may not consider extrinsic evidence unless the motion to dismiss is converted into one for summary judgment. Fed. R. Civ. P. 12(d). The Court should not make such a conversion where the parties have not been given notice and have not been afforded the opportunity to conduct reasonable discovery. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). There are, however, "narrow circumstances" where a court may consider extrinsic materials "without converting the proceeding into a motion for summary judgment." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). For example, the Court may consider documents attached to a motion to dismiss if they are "integral to and explicitly relied on in the complaint" and their authenticity is not in dispute. *Zak*, 780 F.3d at 607 (quoting *Philips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "A court may also properly take judicial notice of 'matters of public record,'" *Goldfarb*, 791 F.3d at 508 (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*,

572 F.3d 176, 180 (4th Cir. 2009)), but only if they can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201.

## DISCUSSION

Chase raises two arguments challenging the viability of Ms. Gunn's claims. With respect to the FCRA, Chase argues that Ms. Gunn fails to state a claim because its report to the CRAs that Ms. Gunn's account was charged off is factually accurate and thus not violative of the law. With respect to defamation, Chase argues that the FCRA preempts Ms. Gunn's claim. In support, Chase requests that the Court take judicial notice of several materials attached to its Motion to Dismiss, and strike Ms. Gunn's Supplement to Opposition as procedurally improper. As discussed below, the Court shall take judicial notice of the materials, grant the Motion to Strike, and determine that both Ms. Gunn's claims survive Chase's Motion to Dismiss.

### I. The Court Will Consider the Materials Attached to the Motion to Dismiss for Their Existence But Not For Any Factual Findings Therein.

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage," as doing so would convert the motion into one for summary judgment. *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021). However, the Court may consider "documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). "A document is 'integral' to the complaint if its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Id.* (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)). A court may further take judicial notice of a fact "that is not subject to reasonable dispute" if it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201. Courts commonly take judicial notice of the

5

proceedings of another court but may not accept that court's finding of fact as true, because "such facts are usually disputed." *Corbitt v. Baltimore City Police Dep't*, 675 F. Supp. 3d 578, 586-87 (D. Md. 2023) (quoting *Hughes v. Freightliner, LLC*, No. 04-CV-309, 2006 WL 1842997, at *1 (W.D. Va. June 29, 2006)). Chase requests that the Court consider three attachments to its Motion to Dismiss from its 2022 lawsuit against Ms. Gunn—the complaint, the docket sheet, and the consent judgment—because they are integral to Ms. Gunn's federal Complaint. ECF No. 24-1, at 6 n.3; ECF Nos. 24-2 to 24-4. Ms. Gunn, for her part, does not dispute the authenticity of these documents. *See generally* ECF No. 28. The Court concludes that the documents are not integral, but are judicially noticeable.

The external documents Chase has proffered do not "give rise" to Ms. Gunn's cause of action. "[C]ourts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute."[4] *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 n.4 (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. 10-CV-206, 2010 WL 2732334, at *2 (D. Md. Jul. 8, 2010)). The litigation documents differ from the examples above as they do not provide the basis for the cause of action or establish a necessary precondition to this lawsuit. *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611. For example, although Ms. Gunn references the consent judgment in the Complaint, her claim does

---

[4] Another common example arises in employment discrimination cases, where records of an employee's initial report satisfy a crucial precondition allowing a plaintiff to bring suit in federal court. *See, e.g. Wooten v. Univ. of Md.*, No. 23-CV-2272, 2024 WL 1908590, at *10 (D. Md. May 1, 2024); *Evans v. Md. State Highway Ass'n*, No. 18-CV-935, 2018 WL 4733159, at *1 n.1 (D. Md. Oct. 2, 2018).

not concern a breach of the consent judgment.[5] The documents may be important evidence later in the case, but these documents—"by their very existence" do not "give[] rise to the legal rights asserted." *Id.* at 611 (quoting *Philips*, 572 F.3d at 180).

Nonetheless, the Court can take judicial notice of the documents "to establish the fact of such litigation and related filings." *In re Under Armour Sec. Litig.*, 409 F. Supp. 3d 446, 456 (D. Md. 2019) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). The documents are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"—the docket of another court. Fed. R. Evid. 201(b). As stated, Ms. Gunn does not dispute the accuracy of these documents, but does dispute Chase's characterization of the consent judgment as establishing the fact that her monthly payments are not being applied to her credit card account. ECF No. 28, at 12. When taking judicial notice of external documents, the Court may not take "the truth of the underlying facts" or "consider the content of the documents to the extent that [a defendant] seek[s] to use them to provide factual evidence or to contradict [a plaintiff's] allegations." *Under Armour Sec. Litig.*, 409 F. Supp. 3d at 456. Accordingly, in assessing the Motion to Dismiss, the Court accepts the documents for the purpose of establishing the existence of the 2022 litigation and the consent judgment, but does not draw any further facts from them.

## II.     The Court Will Strike Ms. Gunn's Supplemental Opposition Because It Was Improperly Filed.

Pursuant to Local Civ. R. 105(2)(a), "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." The decision to allow a surreply "is within the Court's

---

[5] Further, even were the Court to consider the substance of the Consent Judgment, it is not clear that it would merit a different result given the Court's rejection of Defendant's merger argument below.

discretion . . . but they are generally disfavored." *Courtney-Pope v. Bd. of Educ.*, 304 F. Supp. 3d 480, 485 (D. Md. 2018) (quoting *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015)). The exception lies where the party "'would be unable to contest matters presented to the court for the first time' in the opposing party's reply," in the interest of avoiding prejudice to a party that has not had an opportunity to address a new argument. *Id.* (quoting *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014)); *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734-35 (D. Md. 2006). Ms. Gunn has not opposed Chase's Motion to Strike and the fourteen-day time limit by which "all memoranda in opposition to a motion" must be filed has expired. Local Civ. R. 105(2)(a). For the reasons described below, the Court will grant Chase's Motion and strike the Supplement.

Ms. Gunn's Supplement to her Opposition "is an improper surreply filed without leave of Court and in violation of this Court's Local Rules." ECF No. 34, at 1. Ms. Gunn's Supplement to her Opposition is not stylized as a motion for leave to file a surreply and does not point to any basis for inclusion in the record. *See generally* ECF No. 32. These procedural deficiencies weigh in favor of striking the Supplement. *Dwonzyk v. Baltimore Cnty*, 328 F. Supp. 2d 572, 578 (D. Md. 2004) (declining to consider a surreply because the plaintiff "failed to seek leave of court"). But given " the federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities," the Court considers the substance of the filing and concludes that it too weighs towards striking the Supplement. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (quoting *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009)).

The Supplement seeks to add facts to the record, in particular the assertion that Ms. Gunn's monthly payments to Chase have been applied to her credit card account balance, as opposed to payments required by the consent judgment. ECF No. 32, at 1. In a sworn affidavit, Ms. Gunn declares that she called Chase and that a representative "confirmed . . . that her . . . payments were being applied to the credit card account and that the balance on her credit card had been paid down from $21,692 to $15,152.42." *Id.* at 1. This is improper for two reasons. First, it responds to an argument central to Chase's initial Motion to Dismiss—not an issue presented for the first time in reply. *See Courtney-Pope*, 304 F. Supp. 3d at 485. Ms. Gunn could have raised this argument in her initial Opposition, but she neglected to do so. *See, e.g.*, *Clear Channel Outdoor, Inc.*, 22 F. Supp. 3d at 529. Second, to the extent that Ms. Gunn seeks to introduce additional allegations outside the scope of her Complaint, this Supplement is an improper method to do so. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing."). Accordingly, the Court grants Chase's Motion to Strike Ms. Gunn's Supplemental Opposition and does not consider it or any of the attachments to it in the following analysis.

### III. The Complaint Adequately Alleges a Violation of the Fair Credit Reporting Act's Requirements for Furnishers of Information to Credit Agencies.

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Saunders*, 526 F.3d at 147 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). The law imposes various responsibilities on "furnishers of information" who provide information to CRAs, including a prohibition on sharing information that a furnisher knows is inaccurate.[6] 15 U.S.C. § 1681s-2(a).

---

[6] Chase notes that there is no private right of action for violations of the duty to provide accurate information pursuant to 15 U.S.C. § 1681s-2(a). ECF No. 24-1, at 4 (citing *Saunders*, 526 F.3d at

The parties agree that Chase is a furnisher under the FCRA.  ECF No. 24-1, at 4; ECF No. 28, at 6.

This case implicates a furnisher's duties that arise when a consumer disputes the accuracy of information contained in their credit report.  When a consumer notifies a CRA of an issue, the CRA must notify the furnisher.  *Id.*  Then, the furnisher is required to:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency . . . ;
>
> (C) report the results of the investigation to the consumer reporting agency; [and]
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis . . . .

15 U.S.C. § 1681s-2(b)(1).  The Fourth Circuit has made clear that furnishers must review for both inaccuracies and omissions that could "create a materially misleading impression."  *Saunders*, 526 F.3d at 148.  Thus, to state a claim pursuant to Section 1681s-2(b), a plaintiff must allege that "(1) that she notified a CRA of the disputed information, (2) that the CRA notified the Defendant furnisher of the dispute, and (3) that the furnisher then failed to reasonably investigate and modify the inaccurate information."  *Long v. Pendrick Cap. Partners II, LLC*, 374 F. Supp. 3d 515, 527 (D. Md. 2019).

Chase does not dispute that Ms. Gunn has sufficiently alleged the first two elements.  ECF No. 21, at 2 (stating Ms. Gunn "disputed the [Chase] account with the [CRAs]" and that "[t]he [CRAs] forwarded [Ms. Gunn's] dispute to [Chase]"); *see generally* ECF No. 24-1.  Chase instead

---

149).  While this is correct, the Court need not address that subsection because Ms. Gunn's FCRA claim stems only from Section 1681s-2(b)(1).  ECF No. 21, at 4.

focuses on the third element arguing that Ms. Gunn's allegations "indicate Chase's reporting of the account as 'charged off' is accurate" and thus are insufficient to support a violation of Section 1681s-2(b)(1). ECF No. 24-1, at 5-6. Ms. Gunn counters that reporting of the charged-off status is inapposite—although it is technically accurate, the report is nonetheless deficient because Chase fails to report Ms. Gunn's payment plan and recent contributions towards the account. ECF No. 28, at 8-10. As discussed below, Ms. Gunn has the better argument.

First, Chase posits that if a report is true, it necessarily fails to be inaccurate pursuant to Section 1681s-2(b)(1). ECF No. 24-1, at 5. This argument conflicts with Fourth Circuit precedent. When it passed the FCRA, "Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." *Saunders*, 526 F.3d at 148. "[A] consumer report that contains technically accurate information may be deemed 'inaccurate,'" for example, by omitting a fact about a consumer's recent participation in a payment plan, or by neglecting to disclose that a consumer disputed his debt. *Id.* at 148, 150; *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 813 (7th Cir. 2023).

Ms. Gunn does not dispute Chase's characterization of her account as charged off.[7] ECF No. 28, at 2. Rather, she argues that Chase's failure to disclose the payment plan, her monthly payments, and the fact that she disputed the bank's description of her account creates a misleading impression of her recent actions as a debtor. According to her Complaint, Ms. Gunn has made timely payments towards her credit card debt for over eighteen months. ECF No. 21, at 2.

---

[7] Chase argues that Ms. Gunn's Complaint challenges whether it is appropriate for Chase to continue reporting the account as charged off. ECF No. 24-1, at 7-8. Because Ms. Gunn does not raise the charge off issue in her FCRA claim, ECF No. 21, at 4, and she disclaims this position in her Opposition, ECF No. 28, at 15-16, the Court understands the Complaint to not challenge this designation.

Disclosure of such information paints a materially different picture of Ms. Gunn as a debtor today and Ms. Gunn before she began making payments. Ms. Gunn's allegations mirror those of the plaintiff in *Chaitoff v. Experian Information Solutions, Inc.* 79 F.4th 800.[8] There, a CRA omitted from plaintiff's credit report the fact that he had entered into an agreement with his mortgage lender "that allowed him to make lower payments" for a trial period. *Id.* at 808. If he complied with the plan, "his account would be brought current . . . [and] he would no longer be delinquent." *Id.* at 809. In rejecting Defendant's argument that such omissions are not actionable under the FCRA, the Seventh Circuit explained that such an omission "[could] be expected to adversely affect credit decisions" because "[r]eporting that a consumer was 'delinquent on his loan payments without reporting the [trial payment plan] implies a much greater degree of financial irresponsibility." *Id.* at 813-14 (first quoting *Frazier*, 72 F.4th at 776, then quoting *Pittman v. Experian Info. Sols.*, 901 F.3d 619, 639 (6th Cir. 2018)).

The principle holds true here. Chase's omission of Ms. Gunn's more recent payments "render the reported information misleading" as to Ms. Gunn's current status as a debtor. *Saunders*, 526 F.3d at 148. Merely reporting the account as charged off may be accurate, but it suggests that Ms. Gunn is a riskier debtor than may be the case if the mitigating information—the payment plan, the year and half of payments, and status of the account as disputed—had been

---

[8] The plaintiff in *Chaitoff* brought his claim against a CRA pursuant to 15 U.S.C. § 1681e(b). 79 F.4th at 811. While there are textual differences between Section 1681e(b), governing CRAs, and Section 1681s-2, governing furnishers, the Fourth Circuit and most other Courts of Appeals analyze both using the same standard under which material omissions constitute inaccuracy. *Id.* at 812 (collecting cases); *Saunders*, 526 F.3d at 148 n.3, 150. The court in *Chaitoff* drew the materially misleading standard directly from a Section 1681s-2 case law and applied it to Section 1861(e). *Chaitoff*, 79 F.4th at 812-13 (citing *Saunders*, 526 F.3d at 148 n.3; *Frazier v. Dozenmuehle Mortg., Inc.*, 72 F.4th 769, 775-77 (7th Cir. 2023) (Section 161s-2 case)); *see id.* at 813 (holding that "as with § 1681s-2, a material omission" constitutes an inaccuracy pursuant to Section 1681(e)). Thus, *Chaitoff*'s analysis applies directly to Ms. Gunn's claim.

disclosed. *See Chaitoff*, 79 F.4th at 813-14. The Complaint alleges as much. Ms. Gunn avers that she lost credit opportunities because of Chase's failure to disclose this information. ECF No. 21. Chase's failure to provide a full picture thus "create[s] a materially misleading impression" of Ms. Gunn's current situation. *Saunders*, 526 F.3d at 148.

Next, Chase challenges the factual premise of the Complaint, arguing that Ms. Gunn "conflat[es] . . . **the underlying credit card account** with . . . the payment plan she entered into with Chase to satisfy **the consent judgment entered against her** for failure to make payments on the underlying account." ECF No. 24-1, at 6 (emphasis and bold in original). As explained, the Court considers the consent judgment for its existence, not for the truth of the matters asserted therein. "[J]udicial notice must not 'be used as an expedient for courts to consider "matters beyond the pleadings" and thereby upset the procedural rights of litigants to present evidence on disputed matters.'" *Goldfarb*, 791 F.3d at 512 (quoting *Waugh Chapel S., LLC v. United Food & Com. Workers Union Local¸*728 F.3d 354, 360 (4th Cir. 2013). Simply put, the factual question of whether Ms. Gunn's monthly payments go towards the credit card debt or the consent judgment cannot be resolved at this stage in the litigation. As explained above, if the payments do indeed go towards the account, their omission portrays a misleading picture of Ms. Gunn's status as a debtor. If they do not, the outcome may be different, but the Court cannot make that factual finding at the motion to dismiss stage.

Perhaps recognizing such, Chase attempts to frame this issue as a purely legal dispute, as opposed to a factual one. Specifically, Chase argues that the doctrine of merger applies—which stands for the principle that once a judgment is rendered, any underlying claims become one and the same with the final outcome of the litigation. ECF No. 24-1, at 6-7 (citing *Wabash R. Co. v. Tourville*, 179 U.S. 322, 326 (1900)). As a result, according to Chase, the consent judgment

extinguished Ms. Gunn's credit card debt and gave rise to an entirely new claim of judgment debt. Thus, because any payments could not have been made to the credit card account as a matter of law, Chase's alleged failure to report them was accurate.

Chase's argument conflicts with precedent requiring that furnishers provide CRAs with all "material facts" related to a debt. *Chaitoff*, 79 F.4th at 812; *see also Saunders*, 526 F.3d at 148 (explaining that the Fourth Circuit previously "held that a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression"). Whether a consumer has entered into an agreement memorialized in a consent judgment to pay off a credit card debt and then complied with the terms of the judgment is undoubtedly a material fact regarding a debt. Accordingly, even if, as a technical matter, the judgment turned what had previously been debt on the credit card account into debt on the judgment, Chase must provide CRAs information regarding payments Ms. Gunn had made on the debt. This is for good reason, both legal and practical. Even if Ms. Gunn's debt is no longer officially "credit card debt," it continues to impact Ms. Gunn as a practical matter insofar as it appears on Ms. Gunn's CRA and she is required to make payments towards it. Further, the consent judgment and the credit card debt are functionally the same: each obligates Ms. Gunn to make payments to Chase towards the same dollar amount total arising from the same conduct. Chase does not identify any authority under the FCRA to support its novel argument;[9] nor does it explain

---

[9] Defendant relies on this Court's ruling in *Alston v. Wells Fargo Home Mortg.*, No. 13-CV-3147, 2016 WL 816733, at *10 (D. Md. Feb. 26, 2016), for the proposition that a furnisher is not liable when they report accurate information. *See* ECF No. 31, at 2-3. *Alston* is distinguishable because any alleged inaccuracies in that case hewed in favor of the plaintiff. *Alston*, 2016 WL 816733, at *10. The furnisher's report was thus "not misleading so as to have an adverse effect on Alston" as is required for claims of this type. *Id.* Defendant also cites this Court's decision in *Garey v. BWW Law Grp., LLC*, No. 19-CV-3112, 2021 WL 4521329, at *16 (D. Md. Oct. 4, 2021), in which the Court granted a furnisher's motion to dismiss because a separate court had already determined that the information plaintiff alleged was inaccurate was accurate as a matter of law. *See id.* at *17

why a bank would have an obligation to notify CRAs of payments made pursuant to a payment plan, as made clear in *Chaitoff*, but not payments made on the same debt pursuant to a judgment.[10] As the Fourth Circuit has stated in rejecting similar arguments, "the per se rule suggested by [defendant] would result in numerous reports with omissions that are 'misleading in such a way and to such an extent that [they] can be expected to have an adverse effect.'" *Saunders*, 526 F.3d at 150 (citing *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *see also Pinner v. Schmidt*, 805 F.2d 1258, 1262–63 (5th Cir. 1986) (affirming a jury verdict finding a CRA's report inaccurate when the report described an account as "[l]itigation [p]ending," because the report omitted the fact that the consumer, as opposed to the creditor/furnisher, had brought suit).

Accordingly, viewing the Complaint's allegations in the light most favorable to Ms. Gunn, Chase's alleged omission was materially misleading such that Ms. Gunn has adequately stated a claim under Section 1681s-2(b)(1) of the FCRA.

### IV. The Defamation Claim is Not Preempted by the FCRA Because it Alleges Malice or Willful Intent to Injure a Consumer.

To properly state a claim for defamation, Maryland law requires a plaintiff to allege "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff

---

("The fact that [Plaintiff] continues to dispute the legality of the foreclosure is of no object—[Defendant] is "neither qualified nor obligated to resolve a question that can only be resolved by a court of law," and which, in this instance, already had been resolved by a court of law."). No similar determination has been made in this case. Rather, Defendant, in asking the Court to apply the doctrine of merger, asks this Court to make such a determination for the first time.

[10] Defendant addresses this issue briefly in a footnote in its Reply in Support of its Motion. ECF No. 31, at 2 n.1, again relying on the doctrine of merger. For the reasons stated above, despite the technical difference, under the relevant standard courts have applied when interpreting the FCRA, Defendant is not excused from its obligation to report this information.

thereby suffered harm."[11]  *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (quoting *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009)).  However, the FCRA limits a plaintiff's ability to bring common-law torts in the consumer reporting context, so that the law can function as "a comprehensive statutory scheme" and prevent a "patchwork system of conflicting regulations."  *Ross v. FDIC*, 625 F.3d 808, 812-14 (4th Cir. 2010); *see* 15 U.S.C. § 1681h(e).  Thus, "no consumer may bring any action . . . [for] defamation" against "any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).  Malice consists of reporting inaccurate credit information "while entertaining serious doubts as to the truth of the publication or with a high degree of awareness of probable falsity [or actual knowledge of falsity]."[12]  *Magruder v. Educ. Sys. Fed. Credit Union*, 194 F. Supp. 3d 386, 391 (D. Md. 2016)

---

[11] The parties do not clarify which jurisdiction's law applies to Ms. Gunn's defamation claim.  The Court has federal question jurisdiction over Ms. Gunn's FCRA claim pursuant to 28 U.S.C. § 1331.  Her defamation claim is closely related, such that the two claims "form part of the same case or controversy" in a manner that allows this Court to exercise supplemental jurisdiction over the state law defamation claim.  28 U.S.C. § 1367(a).  In such a circumstance, federal courts "apply state substantive law" from the forum in which they sit "and federal procedural law."  *Kerr v. Marshall Univ. Bd. Of Governors*, 824 F.3d 62, 74 (4th Cir. 2016).  Accordingly, Maryland's choice-of-law principles apply.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) (explaining a federal court "must of course, apply the choice of law rules applicable in the forum state" when exercising supplemental jurisdiction).  Maryland law calls for application of the substantive law of the place where the injury occurred, which in defamation actions is usually the location of publication.  *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 698 (D. Md. 2011).  Here, the publication likely occurred in multiple states, so the harm is more accurately concentrated in the "plaintiff's state of residence" because "that is where the plaintiff's reputation suffers the most."  *Id.* at 699.  Thus, because Ms. Gunn is a resident of the state of Maryland, ECF No. 21, at 1, Maryland defamation law applies.

[12] The FCRA provides no definition for "malice or willful intent" and "[c]ourts are split on whether state or federal law governs the meaning."  *Ross*, 625 F.3d at 815.  The Fourth Circuit has not decided the issue, *id.*, and this Court need not resolve it for purposes of this Motion because Maryland's definition and the federal definition overlap.  *Samuels v. Tschechtelin*, 763 A.2d 209,

16

(quoting *Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 480 (D. Md. 2006)).  Willfulness comprises "knowingly and intentionally commit[ing] an act in conscious disregard for the rights of others." *Beuster*, 435 F. Supp. 2d at 479 (quoting *Wiggins v. Equifax Servs., Inc.*, 848 F. Supp. 213, 219 (D.D.C. 1993)).  At the motion to dismiss stage, "malice, intent, knowledge, and other condition of mind . . . may be averred generally."  Fed. R. Civ. P. 9(b); *see Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005) (holding that there is no heightened pleading standard for defamation actions).  Chase argues the Ms. Gunn feels to meet this bar because none of her allegations support a state of mind of malice or willful intent; Ms. Gunn disagrees.  ECF No. 24-1, at 8; ECF No. 28, at 18-19.

"[A]lthough the [Complaint] . . . is thin," it has sufficiently alleged willful defamation "such that the claim is not preempted." *Brown v. Credit One Bank*, No. 23-CV-2512, 2024 WL 3993194, at *3 (D. Md. Aug. 28, 2024).  The Complaint establishes that Chase "either . . . did not review [Ms. Gunn's] dispute letter or reviewed the letter and decided to ignore the issues raised in [it]."  ECF No. 21, at 3.  Chase failed to conduct "[a] careful investigation of [the] dispute" and declined to investigate its other databases.  *Id.* at 2-3.  Then, it continued to tell the CRAs that Ms. Gunns account "did not need to be modified."  *Id.* at 3.  These facts support Ms. Gunn's averment that Chase "knows, or should know, that its credit reporting is inaccurate because [its] own records conclusively demonstrate" that fact.  *Id.* at 5.  That is enough at this early stage, where "the Federal Rules require only a general pleading of malice." *Beuster*, 435 F. Supp. 2d at 490; *Brown*, 2024 WL 3993194, at *3 (concluding that the plaintiff adequately alleged malice where

---

242 (Md. 2000) (explaining that under Maryland state law, actual malice is established when the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity"); *N.Y. Times v. Sullivan*, 376 U.S. 254, 279-80 (1964) (same, for purposes of federal law).

the complaint stated a furnisher knew the CRAs would share reports with inaccurate information). The defamation claim is thus not preempted and may proceed.

## CONCLUSION

For the foregoing reasons, Defendant JPMorgan Chase Bank N.A.'s Motion to Strike, ECF No. 34, is GRANTED; its Motion to Dismiss this case, ECF No. 24, is DENIED. Defendant shall file its Answer within fourteen days of this Order.

So ordered.

Date: October 8, 2024                                    _____/s/_____
                                                        Ajmel A. Quereshi
                                                        U.S. Magistrate Judge