UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HEATHER GUNN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 8:24-53-AAQ |
| JPMORGAN CHASE BANK, N.A., | * | |
| Defendant. | * | |

## MEMORANDUM OPINION AND ORDER

This is a case involving a bank's sharing of allegedly inaccurate information regarding a woman's debt to credit reporting agencies. Specifically, Plaintiff, Heather Gunn, alleges that Defendant, JPMorgan Chase Bank, N.A. ("Chase"), failed to disclose complete and accurate information about her credit card debt, harming her as a consumer in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1601 *et seq.*, as well as defaming her. Pending before the Court are Defendant's Motion for Reconsideration, ECF No. 37, and Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF No. 43. The Court will deny Defendant's Motion because it does not identify any legal error warranting a change to the Court's prior opinion and will grant Plaintiff's Motion because Defendant is not prejudiced by amendment at this early stage of the case.

### BACKGROUND

The facts alleged in the First Amended Complaint are detailed more fully in the Court's prior Memorandum Opinion and Order, ECF No. 36, at 1-3.

At some point, Plaintiff obtained a credit card from Chase. *Id.* at 1. In 2020, she fell behind on her payments; as a result, Defendant "charged off" Plaintiff's account, meaning it closed the

1

account and wrote it off as a loss after determining it was uncollectible. *Id.* at 1-2. In February 2022, Defendant sued Plaintiff to recover the debt she owed on the credit card account. *Id.* at 2. Around the same time, Plaintiff retained a debt payoff company to negotiate payment plans with her creditors, including Defendant. *Id.* Defendant and the company reached an agreement regarding the debt, pursuant to which the parties entered a consent judgment that ended Defendant's lawsuit. *Id.* From that point forward, Plaintiff has complied with the agreement and made timely payments on her debt. *Id.*

Nonetheless, Defendant continues to report to various Credit Reporting Agencies ("CRAs") that Plaintiff's account is charged off. *Id.* It does not disclose Plaintiff's payment agreement, nor does it share Plaintiff's eighteen months of on-time payments that have decreased the amount owed on the account. *Id.* According to Plaintiff, such information should have been memorialized in several standard fields of the credit report. *Id.* Plaintiff disputed Defendant's report with the CRAs, who in turn notified Defendant of the complaint. *Id.* She alleges that Defendant failed to conduct a thorough review of her account, stood by its reports, and that it continues to tell the CRAs that nothing in Plaintiff's report requires modification. *Id.*

Plaintiff filed the present lawsuit in December 2023, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1601 *et seq.* (Count I), and defamation (Count II) arising out of Defendant's reporting to CRAs. ECF No. 1. In March 2024, Defendant filed a Motion to Dismiss, challenging both claims. First, it argued Plaintiff failed to state a claim under the FCRA because its report to the CRAs that her account was charged off was accurate. ECF No. 24. Second, it argued the FCRA preempts Plaintiff's defamation claim. *Id.*

The Court denied the Motion. ECF No. 36. With respect to the FCRA claim, the Court applied Fourth Circuit precedent establishing that furnishers of credit information—like

Defendant—must review consumer reports for inaccuracies and omissions that could create a materially misleading impression of the debtor. *Id.* at 10 (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 148 (4th Cir. 2008)).  Although Defendant's report that Plaintiff's account remains charged off is technically accurate, it is nonetheless misleading to omit information about Plaintiff's payment plan and recent payments towards her account. *Id.* at 10-12.  Failure to report this painted "a materially different picture" of Plaintiff as a debtor pre- and post- payments to her detriment, suggesting a riskier debtor profile than may be the case had the mitigating information been disclosed. *Id.*  Plaintiff's Complaint made this impact clear—she averred that she lost credit opportunities as a result of Defendant's incomplete reports. *Id.* at 13.  Further, the Court held that the question of whether Plaintiff's payments went towards her consent judgment or her credit card account was one of fact, unable to be resolved at this stage of the litigation.  Finally, even if the payments did go towards the judgment alone, that information is material as it relates to her debt, such that it should have been disclosed. *Id.* at 13-14.  The Court also concluded that Plaintiff's defamation claim was not preempted. *Id.* at 15-18.

Shortly thereafter, Defendant filed a Motion for Reconsideration, ECF No. 37, arguing the Court made two errors of law in its Memorandum Opinion: (1) the Court misunderstood the legal effect of Defendant's consent judgment against Plaintiff; and (2) the Court should not have relied upon a Seventh Circuit case, *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800 (7th Cir. 2023), in its analysis.  Plaintiff opposed the Motion, ECF No. 39, and Defendant filed an additional Reply, ECF No. 42.

After Defendant's Motion had been fully briefed, Plaintiff filed a Motion for Leave to Amend the First Amended Complaint, ECF No. 43, which Defendant opposed.  ECF No. 43, at 2;

ECF No. 44.  Plaintiff's proposed amendment supplements the Complaint, adding the following additional details:

- Plaintiff fell behind on payments due to a loss of income during the COVID-19 pandemic, instead of as a result of her divorce.  ECF No. 43-2, at 1.

- The name of the debt relief company that negotiated payment plans on her behalf is Freedom Debt Relief.  *Id.*

- Defendant received Plaintiff's payments and applied them to her credit card account.  *Id.* at 2.

- Defendant failed to comply with standard industry practice by which, once a creditor receives payments pursuant to a payment plan, it discloses such payments in a report to a credit reporting agency.  *Id.* at 3.

- Plaintiff disputed her Chase account with CRAs in August, November, and December of 2023, as well as March, April, and June of 2024.  *Id.*

- A careful investigation of Plaintiff's dispute would have prompted Defendant to "report that the account was receiving payments in the comment section" of her credit report.  *Id.*

- In April 2024, Plaintiff asked Defendant to share the balance and payment history of her account.  *Id.* at 4.  Defendant would not share this information in writing, but a representative informed Plaintiff over the phone that "each of her payments ha[d] been applied to the balance of the credit card account."  *Id.* at 5.

- Defendant continues to report the account in the same manner: charged-off, with no additional context regarding payments or any dispute.  *Id.* at 4-5.

- After Defendant's attorney informed Plaintiff that her credit card debt had been terminated, Plaintiff requested that Defendant remove the account from her report. *Id.* at 4 & n.1.

Both Motions are fully briefed and ripe for adjudication.

## ANALYSIS

### I.     Motion for Reconsideration

A district court may reconsider its interlocutory order pursuant to Federal Rule of Civil Procedure 54(b) "when (1) there has been a change in controlling applicable law; (2) the Court made a clear error resulting in manifest injustice; or (3) new facts or evidence have emerged that could not have been discovered before the motion was filed." *Bartch v. Barch*, No. BLH-23-101, 2024 WL 5146011, at *2 (D. Md. Dec. 17, 2024) (citing *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018)). "This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule[s] 59(e)" and 60(b) but differs in that it allows for "broader flexibility" as "new facts or arguments come to light." *U.S. Tobacco Coop Inc.*, 899 F.3d at 256-57 (quoting *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)). "Nevertheless, the discretion afforded by Rule 54(b) 'is not limitless,'" because "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* (first quoting *Carlson*, 856 F.3d at 325, then quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).

Defendant invokes one ground for reconsideration—legal error—arguing that in its prior Memorandum Opinion, the Court "misapprehend[ed] the merger doctrine" and its effect on Plaintiff's credit card debt, and that the Court should not have relied on *Chaitoff* because the

circumstances in that case differ from those present here. ECF No. 37, at 1-2. Neither argument identifies error warranting reconsideration.

Proper application of the merger doctrine does not extinguish Plaintiff's FCRA claims; Defendant's interpretation pushes the doctrine beyond its understood application and ignores the Court's obligation to accept the allegations in the Complaint as true. As described in the Court's prior Opinion, the doctrine of merger stands for the proposition that all parts of a single claim merge into a judgment. ECF No. 36, at 13-14 (citing *Wabash R. Co. v. Tourville*, 179 U.S. 322, 326 (1900)). The doctrine is intertwined with claim preclusion, in that it bars litigation of matters that were, or could have been, raised in a prior lawsuit. 18 Charles Alan Wright et al., *Federal Practice & Procedure* § 4406 (3d ed. 2024); 30 *Williston on Contracts* § 76:50 (4th ed. 2024). The particular aspect of merger that Defendant invokes typically arises in the contractual context, where courts recognize that "a simple contract is merged in a judgment" such that "all its powers to sustain rights and enforce liabilities terminate[] in the judgment." *Accubid, Inc. v. Kennedy Contractors, Inc.*, 981 A.2d 727, 738 (Md. 2009) (quoting *Jackson v. Wilson*, 25 A. 980, 981 (Md. 1893)); *see also* Restatement (Second) of Judgment § 18 cmt. a (Am. L. Inst. 1982) ("When the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it, . . . [such that] plaintiff's original claim is said to be 'merged' in the judgment.").[1] Accordingly, a traditional application of the doctrine would prevent Defendant from filing suit against Plaintiff for a second time based on rights arising out of the

---

[1] "Maryland courts look to the Restatement of Judgments when discussing the concept of merger." *Jones v. Aberdeen Proving Ground Fed. Credit Union*, No. ELH-21-1915, 2022 WL 1017094, at *13 (D. Md. Apr. 5, 2022) (citing *Cain v. Midland Funding, LLC*, No. 0530, 2016 WL 1597179, at *9 (Md. Ct. Spec. App. Apr. 21, 2016); *Monarc*, 981 A.3d at 831-32; *Accubid Excavation, Inc.* 981 A.2d at 737).

underlying contract related to her credit card debt; it would also prevent Plaintiff from filing a lawsuit against Defendant arising out of that same contract.

Merger does not, however, bar a subsequent lawsuit if the later action is independent from the merits of the original proceeding, even if they are factually related. For example, it is well-accepted that merger does not bar a subsequent suit for "statutorily-permitted or rules-based attorney's fees, where [the Court] ha[s] determined that a claim to attorney's fees is collateral to or independent from the merits of" the underlying contract action. *Monarc Constr., Inc. v. Aris Corp.*, 981 A.2d 822, 831 (Md. 2009). In contrast, attorney's fees awardable solely pursuant to a contract merge with a final judgment and cannot be pursued in a later action because they "form part of the damages claim" of the initial lawsuit. *Id.* This case is more comparable to a suit for statutorily-permitted attorney's fees because Plaintiff's claim arises out of the FCRA—a separate statute—rather than the contract that merged with the consent judgment. Her claim does not arise out of the terms of her credit card agreement, but rather stems from whether Defendant properly complied with the FCRA when it reported the status of her account. Accordingly, the present lawsuit does not entail relitigating claims that should have (or could have) been raised in the debt collection suit, and instead turns on questions of fact and law distinct from the merits of the underlying action. Thus, it is not barred by merger. *See, e.g. Kent Cnty. Bd. of Ed. v. Bilbrough*, 525 A.2d 232, 236-39 (Md. 1987) (reasoning that the doctrine of merger did not bar a plaintiff's action for the spreading of information in a false light despite an earlier lawsuit against the same defendant for civil rights violations because each constituted a separate transaction).

Perhaps recognizing the inapplicability of merger as commonly understood, Defendant advances a different formulation, attempting to apply it in a manner unsupported by precedent and conflicting with the Court's obligation to accept Plaintiff's factual assertions as true upon a Motion

7

to Dismiss. Defendant argues that "by operation of the merger doctrine, Ms. Gunn's [credit card] debt no longer exists[;]" thus, as a matter of law she cannot be making payments towards it, and this in turn renders its report to the CRAs accurate for purposes of the FCRA. ECF No. 37, at 4 (internal quotation marks omitted). Defendant fails to identify any case law supporting application of the doctrine in this manner.[2] *See generally* ECF Nos. 37, 42. The underlying debt "is extinguished" in that neither the original debtor nor creditor can seek further relief based on the contract which created the debt. But, importantly for the purposes of the FCRA, it does not disappear as a practical matter—Plaintiff alleges, and the Court must accept as true, that the credit card debt appears on her credit report, that she makes regular payments towards her balance, and that the debt total is decreasing. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) ("[The Court] accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff"). These are factual contentions that the Court is not at liberty to disregard. *See id.* ("a court cannot 'favor[ ] its perception of the relevant events over the narrative offered by the complaint,'" (quoting *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Further, as explained in the Memorandum Opinion, "if the

---

[2] The caselaw that Defendant does cite does not support application of merger as Defendant asserts it; nor does it undercut this Court's prior ruling. For example, Defendant points to *Makela v. Experian Info. Sols., Inc.*, No. MC-21-386, 2021 WL 5149699, at *2-4 (D. Or. Nov. 4, 2021). ECF No. 42, at 2-3. *Makela* holds that a CRA may continue to report an account as charged off when it has in fact been charged off—it does not hold, as is the issue in this case, that under the FCRA a Defendant may neglect to report continued payments towards a charged-off debt pursuant to a consent judgment. *See Makela*, 2021 WL 5149699, at *2-4 (explaining that once a consumer's account is marked charged off, "[t]he FCRA allows credit reporting agencies to retain a charged off notation for a debt on a consumer's credit report for up to seven years" (citing 15 U.S.C. § 1681c(1)(4))); *see also* ECF No. 42, at 2-3 (citing several cases which stand for the same point). As the Court has repeatedly stated, the issue in this case is not the charged-off designation, but rather the omission of Plaintiff's payments towards the account. *See, e.g.* ECF No. 36, at 13 ("[I]f the payments do indeed go towards the account, their omission portrays a misleading picture of Ms. Gunn's status as a debtor.").

payments do indeed go towards the account, their omission portrays a misleading picture of Ms. Gunn's status as a debtor," which runs afoul of the FCRA.  ECF No. 36, at 13.  Defendant asks the Court to adopt a technical reading of the FCRA at odds with Fourth Circuit precedent on the Act's requirements.  Accordingly, the Court's initial analysis regarding merger was not a clear error resulting in a manifest injustice.

Finally, the Court's mere reference to *Chaitoff* does not constitute a clear error.  As persuasive authority, the Court is not bound by *Chaitoff*'s reasoning, and the case did not dictate the outcome of Defendant's Motion to Dismiss.  *See Int'l Custom Prods., Inc. v. United States*, 843 F.3d 1355, 1360-61 (4th Cir. 2016) (explaining it may be useful to consider another Circuit's case law even if the Court is not bound by it).  The Court pointed to it as an example of a FCRA violation because it illustrates one application of the Fourth Circuit's legal test—which is binding on the Court—in a different context.  Defendant is correct that the plaintiff in *Chaitoff* was not subject to a consent judgment, like Plaintiff is here, but that difference is inconsequential as to the result of Defendant's Motion.  The salient point was that, as the Fourth Circuit has stated, the omission of information, even if technically accurate, may nonetheless violate the FCRA if the omission could "render the reported information misleading."  ECF No. 36, at 12 (citing *Saunders*, 526 F.3d at 148).  Accordingly, the existence of the consent judgment does not eliminate Defendant's obligation to disclose all relevant material, including the fact that Plaintiff, as alleged, has made numerous payments towards the amount she owed originating from her account.

For these reasons, Defendant has not met the high bar required for reconsideration; thus, its Motion will be denied.

**II.     Motion for Leave to Amend**

9

Under Federal Rule of Civil Procedure 15(a), a party has ample opportunity to amend a pleading as a matter of course at the start of a litigation. Fed. R. Civ. P. 15(a) (explaining that a party may amend its pleading once as a matter of right within 21 days of service, or within 21 days of service of an applicable motion under Rule 12). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." *Id.* at (a)(2). The "grant or denial of an opportunity to amend is within the discretion of the [d]istrict [c]ourt," *Foman v. Davis*, 371 U.S. 178, 182 (1962), and Rule 15 directs courts to "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2). Accordingly, leave to amend should be denied only if "(1) the amendment would be prejudicial to the opposing party; (2) there has been bad faith on the part of the moving party; or (3) the amendment would have been futile." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (quoting *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013) (Wilkinson, J. dissenting)) (internal quotation marks omitted). The Fourth Circuit's stated preference is to liberally allow amendment in light of "a wider federal policy of—when possible—resolving cases on the merits." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022).

The Court will grant Plaintiff's Motion to Amend because none of the conditions for denial are present here, despite Defendant's arguments to the contrary. *See* ECF No. 44.

**A. Amendment Does Not Prejudice Defendant at this Early Stage in the Litigation.**

"Prejudice is the weightiest factor, the absence of thereof, 'though not alone determinative, will normally warrant granting leave to amend.'" *Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 346 (D. Md. 2018) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)); *see also* 6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1487 (3d ed. 2024) ("[I]f the court is persuaded that no prejudice will accrue, the amendment should be

10

allowed"). "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). An amendment raising "a new legal theory" that requires additional discovery "offered shortly before . . . trial" is likely prejudicial, *id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)), whereas an amendment adding "an additional theory of recovery to the facts already pled" that is "offered before any discovery has occurred" is not, *id.* The "time, effort, and money . . . expended in litigating [a] case do not constitute 'substantial prejudice' weighing against leave to amend." *Best v. Newrez LLC*, No. GJH-19-2331, 2020 WL 5513433, at *8 (D. Md. Sept. 11, 2020) (quoting *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. ELH-16-3431, 2017 WL 2377105, at *9 (D. Md. May 31, 2017)).

Plaintiff's amendment does not prejudice Defendant because it is offered early in the litigation, only minimally alters the prior Complaint, and does not result in any wasted resources for the Court or for the parties. This case has not yet proceeded to discovery—the quintessential posture in which amendment is not prejudicial. *Laber*, 438 F.3d at 427 ("An amendment is not prejudicial if . . . [it] is offered before any discovery has occurred"); *see also Doe v. Mercy High School, Inc.*, No. JRR-23-1184, 2024 WL 4443076, at *3 (D. Md. Oct. 8, 2024) (reasoning the same). Although Defendant invokes the need to "expend additional time and resources responding to [Plaintiff's] proposed amended pleading," resulting in "needless legal expense," ECF No. 44, at 3, it is well-established that the relatively minimal cost associated with responding to an amended pleading does not constitute prejudice. *Doe*, 2024 WL 4443076, at *3 ("[T]his court has rejected the argument that being required to respond to multiple complaints constitutes prejudice."); *Best*, 2020 WL 5513433, at *8-9 (rejecting defendant's argument that the time and resources spent filing multiple motions to dismiss prior to amendment constitutes prejudice).

11

Further, the proposed amendments "merely add[] specificity to [the] allegations," which "generally does not cause prejudice to the opposing party."  *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 195 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F. 3d 231, 243 (4th Cir. 1999)); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case.").

Defendant points to no additional grounds for prejudice, and no other is apparent in the record.  *See Edwards*, 178 F.3d at 243 (suggesting that leave to amend should be granted unless prejudice is "obvious from the record").  The absence of prejudice weighs heavily in favor of allowing amendment.  *See Oliver*, 350 F. Supp. 3d at 346.

**B. The Amendment is not Futile Because it Bolsters the Complaint.**

An amendment is futile when "the proposed [changes] could not withstand a motion to dismiss," meaning the allegations, accepted as true, fail to state a claim for relief.  *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017).  "If a proposed amendment is not clearly futile, then denial of leave to amend is improper."  6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1487 (3d ed. 2024).

Amendment is not futile because Plaintiff's amendments bolster, rather than detract from, her Amended Complaint which has already withstood multiple challenges.  For example, the First Amended Complaint stated that Plaintiff made "timely payments on her credit card debt," whereas the proposed amendment adds additional detail, clarifying that Defendant "received Plaintiff's payments" and "applied Plaintiff's payments to the credit card account."  ECF No. 43-2, at 2.  It specifies that it is standard industry practice "for a creditor receiving payments on a new payment

12

plan . . . to include a comment stating the consumer is making payments under a payment plan," and that Defendant "did not include any such comments." *Id.* at 3.  Accepted as true, these contentions strengthen Plaintiff's claims and supplement the grounds supporting the Court's prior ruling.

Most of Defendant's Opposition argues that amendment would be futile, describing Plaintiff's Motion as a "transparent effort to circumvent a ruling on [its] Motion for Reconsideration," which Defendant assumed would be granted.  ECF No. 44, at 3.  As explained in the prior section, the Motion for Reconsideration will be denied.  Accordingly, it is not futile for Plaintiff to seek leave to amend an already sufficient complaint.

### C. There is No Evidence that Plaintiff Offers the Amendment in Bad Faith.

"Bad faith is established 'when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [and] to present theories seriatim in an effort to avoid dismissal." *Wilson v. Eagle Nat'l Bank*, No. JRR-20-1344, 2025 WL 372994, at *7 (D. Md. Jan. 31, 2025) (quoting *Carter v. SNC-Lavalin Constructors, Inc.*, No. DKC-17-3198, 2019 WL 918382, at *3 (D. Md. Feb. 25, 2019)).  "[T]he earlier in the case the motion for leave to amend is brought, the less likely it is that the motion is brought in bad faith." *Brocious v. United States Steel Co.*, No. SAG-18-3823, 2020 WL 362823, at *3 (D. Md. Jan. 22, 2020).

There is no evidence in the record of bad faith, nor is the amendment "based on false pretenses."  ECF No. 44, at 4.  As previously discussed, the amendment is offered early in the litigation and bolsters an already sufficient claim with additional detail.  Instances where this Court has found bad faith involved egregious behavior, such as repeatedly proposing alterations to a complaint that "significantly revise[d] [a Plaintiff's] factual and legal claims," *Daulatzai v.*

*Maryland*, 606 F. Supp. 3d 252, 263-64 (D. Md. 2022), turning the litigation into "a game of whack-a-mole in which plaintiffs plead, defendants defend, courts consider and rule, and then the process starts all over to satiate a plaintiff's hope she'll luck into something," *id.* (quoting *Finicum v. United States*, No. SU-18-160, 2021 WL 3502462, at *4 (D. Or. Aug. 5, 2021)). Plaintiff has not meaningfully altered her claim in such a manner.

Nor does Thomas Alston's involvement in this case, without more, establish bad faith. The Court has previously acknowledged Mr. Alston's activities in this Court. ECF No. 36, at 3; *see also Miller v. Trident Asset Mgmt., LLC*, No. ADC-18-2538, 2019 WL 6528610, at *3-8 (D. Md. Dec. 4, 2019). Defendant argues that his affiliation with Plaintiff's lawsuit suggests bad faith, noting that "forcing defendants to incur needless legal expense is . . . the centerpiece of the Alston *modus operandi*." ECF No. 44, at 3. However, Plaintiff's case lacks the hallmarks of his prior litigation that the Court has found troubling, such as filing suit on behalf of a family member, committing obvious fraud, or abandonment of the litigation by counsel. *See Miller*, 2019 WL 6528610, at *3-10. Merely seeking to amend the Complaint while the Motion for Reconsideration is pending does not constitute an abusive litigation tactic sufficient to support a finding of bad faith. *See Evans v. Trinity Indus., Inc.*, 148 F. Supp. 3d 542, 546-47 (E.D. Va. 2015) (denying defendants' Motion for Reconsideration and granting plaintiffs' Motion for Leave to File Amended Complaint, which was filed while the Motion for Reconsideration was pending).

Defendant further argues that Plaintiff's amendment alleges inaccurate information because before Plaintiff filed her Motion, counsel exchanged consumer credit reports that "reported her account as charged off." ECF No. 44, at 4. Defendant's argument ignores that Plaintiff's initial Complaint and her amendment explicitly acknowledge this fact. ECF No. 43-2 (stating that Defendant "charged off Plaintiff's credit card in August 2021"). As stated in the

14

Court's prior opinion, Plaintiff does not challenge Defendant's report of the account as charged off, rather, the issue is that the omission of her payment plan and recent payments towards the account render her credit report misleading.[3] *See* ECF No. 36, at 11-15; *Saunders*, 526 F.3d at 148.

Finally, the proposed Amended Complaint's change for the reason Plaintiff fell behind on her credit card payments—from divorce to the COVID-19 pandemic—does not support a finding of bad faith because the fact is of limited import to her claim. ECF No. 44, at 3 n.1; ECF No. 43-2 at 1. While it is true that "[a] plaintiff who 'adopt[s] contradictory factual positions in order to match their evolving legal theories evidences a degree of bad faith sufficient to warrant denial of leave to amend,'" what Plaintiff alters here is immaterial to the substance of her claim; thus, is insufficient to support a finding of bad faith. *Daulatzai*, 606 F. Supp. 3d at 263 (quoting *Scott*, 733 F.3d at 126 (Wilkinson, J. dissenting)).

## CONCLUSION

For the aforementioned reasons, Defendant's Motion for Reconsideration, ECF No. 37, is denied, and Plaintiff's Motion for Leave to file a Second Amended Complaint, ECF No. 43, is granted.

So ordered.

Dated: March 26, 2025                                    _____/s/_____
                                                         Ajmel A. Quereshi
                                                         United States Magistrate Judge

---

[3] In her Amended Complaint, Plaintiff states that Defendant's attorney "informed [her] that the credit card debt had been terminated and was no longer enforceable" due to merger with the consent judgment. ECF No. 43-2, at 4 n.1. On that basis, Plaintiff requested that the account be removed from her credit report. *Id.* at 4. As previously stated, reporting the account as charged off is permissible because it is accurate. ECF No. 36, at 11 n.7. Furnishers may continue to report accounts as charged off for up to seven years, and Defendant is well-within that time limit. 15 U.S.C. § 1681c(a)(4).