**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| HEATHER GUNN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 8:24-cv-00053-AAQ |
| JPMORGAN CHASE BANK, N.A., | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

This case concerns a bank's sharing of information about the status of a woman's debt to credit reporting agencies. Plaintiff, Heather Gunn, alleges that Defendant, JPMorgan Chase Bank, N.A. ("Chase"), failed to disclose complete information about her debt, painting a misleading picture of her as a consumer. She alleges that these omissions constitute a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and defamation. Pending before the Court is Chase's Motion in Limine, ECF No. 84, Chase's Motion for Summary Judgment, ECF No. 94, and Ms. Gunn's Cross-Motion for Summary Judgment, ECF No. 105. For the reasons discussed below, the Court will grant Chase's Motion in Limine and Motion for Summary Judgment and deny Ms. Gunn's Cross-Motion.

**BACKGROUND**

In 2018, Ms. Gunn obtained a credit card from Chase, a large and well-known bank. ECF No. 105, at 3. In 2021, Ms. Gunn fell behind on payments to several creditors—including Chase. *Id.* She also had credit card debt with Capital One, American Express, and Discover. ECF No. 94-7, at 62:17–63:21. In August 2021, Chase "charged off" Ms. Gunn's credit card account, meaning it closed the account and wrote it off as a loss after determining it was uncollectable. ECF No. 94, at 1; *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 146 n.2 (4th Cir. 2008). In February 2022, Chase sued Ms. Gunn seeking to recover the debt she

owed on the credit card account, in the amount of $21,692.42. ECF No. 94, at 2; ECF No. 94-2, at 2. That same year, Ms. Gunn retained a debt payoff company to negotiate payment plans with her creditors. ECF No. 105, at 3. The company helped her reach an agreement with Chase, pursuant to which the parties entered a consent judgment that ended Chase's lawsuit. *Id.* Ms. Gunn complied with the terms of the judgment, making regular payments from November 2022 to February 2025, ultimately settling her debt with Chase. ECF No. 94-2, at 2; ECF No. 105-3 ¶ 61.[1]

During that time, Chase continued to report to various Credit Reporting Agencies ("CRAs") that Ms. Gunn's account was "charged off." ECF No. 105, at 7. On August 6, 2023, Chase reported Ms. Gunn's "Past Due Amount" as $18,812 and her "Last Payment Date" as June 29, 2023. ECF No. 105-6, at 2. On November 9, 2023, Chase reported her "Balance" as $17,852 and the "Last Update[]" as October 2023. ECF No. 105-8, at 2. On December 10, 2023, Chase reported her "Past Due Amount" as $17,532, and her "Last Payment Date" as October 30, 2023. ECF No. 94-5, at 2. On March 3, 2024, Chase reported her "Balance" as $16,572 and "Last Update" as February 2024. ECF No. 105-10, at 1. On May 27, 2024, Chase reported her "Balance" as $14,052 and "Last Update" as May 2024. ECF No. 105-12, at 1. Chase did not report the existence of Ms. Gunn's Consent Judgment, nor did it mark her account as "disputed." *Id.*; ECF No. 105, at 4. Ms. Gunn argues that her payments should

---

[1] Thirteen days after filing her Opposition to Chase's Motion for Summary Judgment, and one day before Chase filed its Reply, Ms. Gunn filed an untimely Amended Exhibit List. *See* ECF No. 107. The Amended Exhibit List includes Robert Wilkins' Deposition Transcript and Plaintiff's Deposition Transcript, which Ms. Gunn listed in her initial Exhibit List but failed to upload. *See* ECF No. 107, at 1 n.2. Ms. Gunn also includes three new Exhibits, including a dispute submitted to Trans Union on March 5, 2024, ECF No.107-9, a credit report from Factual Data generated on April 3, 2024, ECF No. 107-10, and a dispute submitted to Experian on April 9, 2024, ECF No. 107-11. After reviewing all the Exhibits, the Court finds that the additional Exhibits submitted by Ms. Gunn do not change the Court's analysis or the outcome of this case. Accordingly, the Court cites to Ms. Gunn's original Exhibit List throughout this Opinion.

have been memorialized in several standard fields of a credit report including, among others, scheduled monthly payment, account status, and actual amount paid. *Id.* at 5.

Ms. Gunn disputed the omissions in Chase's reports with the CRAs, who in turn notified Chase of her complaints. ECF No. 105, at 5–12. In response, Chase confirmed the information it had previously reported to the CRAs. *See* ECF 105-15, at 55–111. Chase did not update its report to reflect the Consent Judgment. *Id.* Ms. Gunn disputed this issue with the CRAs five times. *See* ECF No. 105, at 5–12. She believes Chase's characterization of her account status omitted "relevant information that speaks to [her] creditworthiness." *Id.* at 15.

Ms. Gunn was alerted to the inaccuracies in her credit report when she was considering buying a new car but decided not to when she saw that her credit score was too low. ECF No. 94-7, at 94:14–19. She acknowledges that her low credit score was primarily a result of her past delinquency, lack of variation in credit, and inquiries on her credit report—not the alleged reporting inaccuracies. *Id.* at 94:20–95:12. Ms. Gunn alleges that she has suffered emotional distress, manifesting as insecurity, nausea, and humiliation, due to her low credit score. *Id.* at 141:8–142:9. She experienced neck pain, head pain, tension, headaches, and sleeplessness when she prepared her credit score disputes to the CRAs.[2] *Id.* at 144:4–18; ECF No. 105-3 ¶ 55. She has not sought medical or psychological help for her symptoms. ECF No. 94-7, at 144:19–145:7.

Ms. Gunn provides the declaration of her friend, Robert Hall, to corroborate her emotional distress. *See, generally,* ECF 105-17.[3] Mr. Hall recounts that Ms. Gunn's "spirits

---

[2] In her Opposition, Ms. Gunn states that she additionally suffered from anxiety and racing pulse, citing her deposition. ECF No. 105, at 28. The citation provided by Ms. Gunn does not support this assertion, nor does any other evidence in the record. *See id.*; ECF No. 94-7.

[3] Chase asks this Court to consider that in connection with Robert Hall, Thomas Alston, a prolific litigant in this Court, has been involved with the case. ECF No. 94, at 6–8, 21 n.16, 24; *Alston v. Orion Portfolio Servs.*, LLC, No. 16-CV-3697, 2017 WL 784122, at *1 n.1 (D. Md. Mar. 1, 2017) (describing Mr. Alston's history of litigation). Mr. Alston has filed many

were down. She was somewhat distraught and colored with a level of despair which was very much unlike the positive, humorous and bubbly person that [he had] known her to be." *Id.* ¶ 7. He described her as reflecting "a generalized level of forlorn about where she was at in her financial life" and feeling "embarrassed, over emotional, and over analytical about it." *Id.* ¶¶ 15, 17. Lastly, he heard her crying on some of their phone calls. *Id.* ¶ 21. When subpoenaed, Mr. Hall objected. ECF Nos. 59-1, 59-2. Chase has never deposed Mr. Hall because he failed to appear at two scheduled depositions. ECF No. 84-2, at 2–4; ECF No. 84, at 3.

On December 20, 2023, Ms. Gunn filed this lawsuit pro se in the Circuit Court for Montgomery County, Maryland alleging violations of the FCRA (Count I), and defamation (Count II) arising out of Chase's reporting to CRAs. ECF No. 1-2, at 3–5. The next month, Chase removed the case to this Court. ECF No. 1. Chase filed a Motion to Dismiss on March 22, 2024. ECF Nos. 24, 28, 31. In May 2024, several weeks after the parties completed briefing, Ms. Gunn filed a Supplement to her Opposition and attached several supporting materials including a personal affidavit. ECF Nos. 32, 33. Chase subsequently filed a Motion to Strike the Supplement, to which Ms. Gunn did not respond. ECF No. 34. This Court denied Chase's Motion to Dismiss and granted its Motion to Strike. ECF No. 36. Shortly after, Chase asked the Court to reconsider the denial of the Motion to Dismiss. ECF No. 37. The Court denied the Motion for Reconsideration. ECF No. 46. After commencing discovery, Chase filed a Motion in Limine to exclude Robert Hall's testimony and documentary evidence on the ground that Ms. Gunn does not know him that well and that he would not cooperate with Chase's discovery requests. *See* ECF No. 84. On December 19, 2025, Chase filed a Motion for Summary Judgment. ECF No. 94. Ms. Gunn filed a Response in Opposition and cross-moved for Partial Summary Judgment on January 21, 2026, ECF No. 105, to which Chase

---

FCRA cases in this Court—in his own name and by family members. *See Miller v. Trident Asset Mgmt., LLC*, No. 18-CV-2538, 2019 WL 6528610, at *3 (D. Md. Dec. 4, 2024). While the Court notes Mr. Alston's involvement, it does not impact the analysis that follows.

replied on February 4, 2026, ECF No. 109. Ms. Gunn, without seeking leave from this Court, filed a Notice of Amended Exhibit List and a Notice of Supplemental Authority. ECF Nos. 107, 111. Chase opposes both Notices and asks the Court to exclude the Amended Exhibit List from the record. ECF Nos. 108, 112.

**STANDARD OF REVIEW**

The Court will only grant a motion for summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there are factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court must deny the request for summary judgment. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). "A party who bears the burden of proof on a particular claim must factually support each element of his or her claim." *Scott v. U.S.*, No. PJM–06–2777, 2007 WL 3020185, at *1 (D. Md. Feb. 23, 2007). "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256; *see*

*Celotex*, 477 U.S. at 324 (A Motion for Summary Judgment "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" (internal citation omitted)).

**ANALYSIS**

Chase moves for summary judgment on the FCRA claim on four separate, but related grounds. First, Chase argues that it accurately reported information related to Ms. Gunn's debt to the CRAs. ECF No. 94, at 10. Second, Chase argues that Ms. Gunn has not established that "Chase's investigation was not reasonable." *Id.* at 15. Third, Chase argues that Ms. Gunn has not established that she is owed damages "as a result of Chase's reporting." *Id.* Finally, Chase argues that Ms. Gunn has not established that "Chase committed a willful violation of the FCRA." *Id.* at 19. Ms. Gunn cross-moves for summary judgment, arguing that Chase "did not conduct a reasonable investigation," ECF No. 105, at 20, and that Chase "failed to mark [her] account as disputed," *id.* at 25.

The Court finds that Chase is entitled to summary judgment because Ms. Gunn has not adequately proven damages. If a FCRA violation is negligent, the claimant is entitled to actual damages, whereas if the violation is willful, the claimant may be entitled to punitive damages in addition to actual damages. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 53 (2007). A failure to establish damages is fatal to an FCRA claim. *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581 (D. Md. 2015) ("It is not enough, however, to show that a defendant violated § 1681 s-2(b) to survive summary judgment."); *Tinsley v. TRW, Inc.*, 879 F. Supp. 550, 552 (D. Md. 1995) ("The absence of any economic damage dooms Plaintiff's venture in this Court."). Because Ms. Gunn has failed to establish either actual or punitive damages, it is unnecessary for the Court to delve into the merits of her FCRA claim. Without the FCRA claim, this Court will not extend supplemental jurisdiction over Ms. Gunn's defamation claim.

## I. Motion in Limine

As a preliminary matter, Defendant Chase has moved in limine to exclude Robert Hall's evidence from the record on summary judgment and moving forward. *See* ECF No. 84. While motions in limine are "generally ripe only after dispositive motions have been decided," they can be considered by the Court when a nonmovant relies on the disputed testimony in her summary judgment briefing. *See Meyler v. Mayor and City Council of Ocean City*, 736 F. Supp. 3d 272, 296 (D. Md. 2024); *see also Nagy v. Baltimore Life Ins. Co.*, 49 F. Supp. 2d 822, 827 (D. Md. 1999) *aff'd in part, vac'd in part*, 215 F.3d 1320 (4th Cir. 2000).

In this case, where Mr. Hall's declaration is one of only two pieces of evidence Ms. Gunn presents to substantiate her actual damages claim, the Court finds it appropriate to consider the Motion in Limine. During this litigation, Mr. Hall has twice failed to appear for scheduled depositions, ECF No. 84-2; ECF No. 84, at 3, including once after the Court ordered him to appear, ECF No. 73. Although Mr. Hall objected to the subpoena, ECF No. 59-1; ECF No. 59-2, he did so only four hours before the deposition was first set to begin and entirely failed to appear or object after the Court narrowed the subpoena and set a second deposition date. He did not acknowledge his failure to attend his deposition, in violation of the Court's Order, until after Chase filed this Motion. ECF No. 90-1. The Court finds Mr. Hall's lack of cooperation sufficient grounds to grant Chase's Motion in Limine. *See Nagy*, 49 F. Supp. 2d at 827. The Court will disregard Robert Hall's declaration for purposes of the parties' Motions for Summary Judgment.

## II. Count One: The FCRA

### a. Ms. Gunn Has Not Created a Genuine Issue of Material Fact as to Whether She Is Entitled to Actual Damages.

The FCRA allows claimants to recover "any actual damages sustained . . . as a result of" a negligent violation of the statute. 15 U.S.C. § 1681o(a)(1). It is Ms. Gunn's burden to prove that she sustained actual damages due to Chase's violation of the FCRA. *See Robinson*

*v. Equifax Info. Servs, LLC*, 560 F.3d 235, 240 (4th Cir. 2009). "'Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'" *Alston v. Truist Bank*, 22-CV-2974, 2025 WL 2784705, at *13 (D. Md. Sept. 30, 2025) (quoting *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)); *Doe v. Chao*, 306 F.3d 170, 180 n.6 (4th Cir. 2002) (actual damages is a "gatekeeping function [to avoid] tremendous overcompensation of plaintiffs whose damages evidence fails to establish any meaningful injury at all").

Ms. Gunn has not provided sufficient evidence to create a material dispute of fact as to such an injury. She did not experience a denial or loss of credit. ECF No. 94, at 17. Instead, she asks the Court to award damages to compensate her because she was deterred from applying for a new car loan out of fear that her low credit score would prohibit her from securing financing. ECF No. 105, at 27; ECF No. 94-7, at 94:14–95:12. She primarily relies on *Long v. Pendrick Capital Partners II, LLC* for the proposition that she can "be compensated if she is merely deterred from accessing the credit market because of inaccuracies on her credit report." 374 F. Supp. 3d 515, 529 (D. Md. 2019) (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)).

The facts in *Long* are distinguishable from Ms. Gunn's circumstances. In finding that Ms. Long established actual damages, this Court relied on multiple pieces of evidence. Mainly, the Court emphasized that her reluctance to seek new career opportunities made sense in light of the fact that "she worked in an industry that requires a high level of financial trust," had a job that required periodic checks of her credit report, and lost a concrete job opportunity because her "new employer required access to [her] credit report." *Id.* at 524, 529–30. While the Court did consider Ms Long's decision not to apply for a car loan because she believed she was likely to be denied, it was not the only fact presented by Ms. Long to establish her injury.

*Id.* Ms. Gunn on the other hand rests her claim for actual damages solely on her reluctance to apply for a car loan.

Even if that was enough to establish injury, Ms. Gunn has not provided evidence that it was caused by Chase's credit reporting. In *Long*, the erroneous debt on plaintiff's credit report was the only debt affecting her score. 374 F. Supp. 3d at 523. Ms. Gunn, on the other hand, was delinquent on multiple credit card debts including with American Express, Discover, and Capital One. ECF No. 94, at 3. Ms. Gunn does not provide any evidence tying Chase's credit reporting to her credit score, thus failing to create a genuine dispute of material fact as to causation. It is difficult to prove a "substantial causal relationship" between credit reporting and credit score when Ms. Gunn has "other 'blemishes' on [her] credit report" that very well could affect her ability to obtain new credit to an equal, if not greater degree. *See Alston*, 2025 WL 2784705 at *13.

Ms. Gunn also asks this Court for compensatory damages due to the emotional distress she experienced because of Chase's credit reporting. ECF No. 105, at 27–28; ECF No. 94-7, at 141:8–142:9. A plaintiff's testimony alone can support an award of emotional distress damages. *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007). The Fourth Circuit, however, has cautioned that because emotional distress is "'easily susceptible to fictitious and trivial claims,'" a plaintiff must "'reasonably and sufficiently explain the circumstances of [the] injury and not resort to mere conclusory statements.'" *Id.* (quoting *Price v. City of Charlotte*, 93 F.3d 124, 1250–51 (4th Cir. 1996)); *Alston*, 2025 WL 2784705 at *14 ("[T]estimonial evidence 'must be demonstrable, genuine, and adequately explained.'" (quoting *Price*, 93 F.3d at 1252)). Courts in the Fourth Circuit calculate emotional distress damages based on "the overall context of the emotional distress, corroborating evidence of the plaintiff's testimony, the apparent connection between the defendant and the emotional distress, the degree of the alleged distress, physical injuries and medical attention from the

distress, and any loss of income." *Meaney v. Nationstar Mortg.*, 16-CV-2959, 2018 WL 1014927, at 15 (D. Md. Feb. 21, 2018) (citing *Sloane*, 510 F.3d at 503).

While the Court is sympathetic to the difficulties expressed by Ms. Gunn, her testimony does not rise to the level required to survive summary judgment. Ms. Gunn has experienced insecurity, nausea, and humiliation due to her low credit score. ECF No. 94-7, at 141:8–142:9. The Fourth Circuit has held, however, that a plaintiff's allegations "that [she] felt 'embarrassed,' degraded,' or 'devastated,' and suffered a loss of self-esteem, will not suffice to create a disputed issue of material fact for the jury regarding the presence of compensable emotional distress." *Doe*, 306 F.3d at 180 (citing *Price*, 93 F.3d at 1255). Even if it did suffice, the Court cannot factor in these symptoms because Ms. Gunn has not established that Chase's credit reporting practices caused her low credit score, and thus her symptoms. *Alston*, 2025 WL 2784705, at *14 (plaintiff's testimony must show "a causal connection between the violation and her demonstrable emotional distress") (quoting *Price*, 93 F.3d at 1951) (cleaned up).

The symptoms Ms. Gunn experienced directly in connection with Chase's credit reporting are not demonstrable either. Ms. Gunn recalls experiencing neck pain, head pain, tension, headaches, and sleeplessness while preparing her credit score disputes to the CRAs. ECF No. 94-7, at 144:4–18; ECF No. 105-3 ¶ 55. Ms. Gunn supports this testimony by citing to her deposition transcript and Robert Hall's declaration. *See* ECF No. 105, at 28. Since Mr. Hall's declaration has been excluded from this Court's consideration, Ms. Gunn's emotional distress damages claim rests on her testimony alone. She has not sought medical or psychological help for any of her symptoms. ECF No. 94-7, at 144:19–145:7.

While this Court has held that "a plaintiff's testimony, even standing alone, may support an award" of emotional distress damages, it did not hold that conclusory testimony is sufficient. *Alston*, 2025 WL 2784705 at *14. The testimony, standing alone, must still be "demonstrable,

genuine, and adequately explained." *Id.* (quotation omitted). The Fourth Circuit has defined the boundaries of emotional distress claims. *See Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328, 346 (4th Cir. 2023). Overwhelming evidence supporting an emotional distress award includes "(1) provid[ing] 'an objective and inherently reasonable 'factual context' for [plaintiff's] resulting claims of emotional distress,' (2) 'offer[ing] 'sufficiently articulated' descriptions of her protracted anxiety through detailed testimony of specific events and the humiliation and anger she experienced,' (3) provid[ing] evidence that the distress was apparent to others,' (4) provid[ing] 'substantial trial evidence attesting to the direct 'nexus'' between defendant's violations and her distress, (5) her emotional distress 'manifested itself in terms of physical symptoms, particularly insomnia,' and (6) evidence that the stress impacted [the plaintiff's] marriage." *Id.* (quoting *Sloane*, 510 F.3d at 503). By comparison, testimony that a plaintiff felt "'greatly concerned and worried' and was 'torn to pieces'" but "did not seek any medical or psychological treatment or medication" and "offered no testimony about any impact of the defendant's conduct on [her] behavior or physical consequences" has been found insufficient. *Id.* (quoting *Doe*, 306 F.3d at 181).

Ms. Gunn's case is more akin to *Doe*, where the plaintiff's testimony was too bare to create a genuine dispute of material fact. *See Guthrie*, 79 F.4th at 346 (citing *Doe*, 306 F.3d at 181). The cases cited by Ms. Gunn support the same outcome. In *Long*, plaintiff's testimony about her emotional distress was bolstered by the context of her case, including the fact that the debt reported on her account did not belong to her, she maintained a job that placed a "particular importance" on "maintaining a reputation for financial savvy and credit worthiness," and that "she signed a document allowing her employer to access her credit report," putting her job at risk. 374 F. Supp. 3d at 530. In *Meaney*, plaintiff's emotional distress testimony was supported by medical documentation, presenting "evidence consistent with her position that Nationstar's activities exacerbated her ongoing abdominal pain." 2018 WL

1014927 at *15. Ms. Gunn does not provide context to bolster her testimony, nor does she provide enough specificity or admissible[4] evidence that the emotional distress was apparent to others. *See Guthrie*, 79 F.4th at 346. While she does list physical manifestations of her emotional distress, she does not testify that she sought medical assistance to manage those symptoms, nor testimony to show the nexus between Chase's conduct and her symptoms. *See id.*; ECF No. 94-7, at 144:4–145:7. Thus, the Court concludes that there is no dispute of material fact as to actual damages.

**b. Ms. Gunn Has Not Established That Chase Committed a Willful Violation of the FCRA.**

A willful failure to comply with the requirements of the FCRA additionally entitles a consumer to punitive damages, 15 U.S.C. § 1681n(a)(2), even without establishing actual damages, *Davenport*, 124 F. Supp. 3d at 583–84 (citing *Saunders*, 526 F.3d at 152). To establish a willful violation of the FCRA, Ms. Gunn would have to show that Chase "knowingly" or recklessly "committed an act in conscious disregard for [her] rights." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001); *Safeco*, 551 U.S. at 57–58. To establish that Chase recklessly disregarded the FCRA's requirements, Ms. Gunn has to show that "the action is not only a violation under a reasonable reading of the statute's terms, but [] that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69.

The parties disagree on what constitutes evidence of willfulness. Ms. Gunn argues that Chase's repeated failure to correct certain fields on her credit reports in response to her disputes is evidence of a willful violation of the FCRA. ECF No. 105, at 22. Chase argues that Ms. Gunn has provided no evidence that creates a dispute of material fact as to whether Chase acted knowingly or recklessly. ECF No. 94, at 19; ECF No. 109, at 6–7. Ms. Gunn is correct that a

[4] *See supra* section I.

"'repeated failure to comply with *known* regulations can move . . . conduct from inadvertent neglect into reckless or deliberate disregard.'" *Daugherty v. Ocwen Loan Servicing*, *LLC*, 701 Fed. Appx. 246, 253 (4th Cir. 2017) (quoting *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 85 (4th Cir. 2009)) (emphasis added). However, when the law is unclear, "a party that relies on a reasonable but erroneous interpretation of the FCRA cannot be found to have acted recklessly or willfully." *Id.* "To assess whether a reading is objectively reasonable, courts consider whether the reading 'has a foundation in the statutory text' or whether parties have the 'benefit of guidance from the courts of appeals' or federal regulatory agencies." *Alston*, 2025 WL 2784705 at *15 (quotation omitted).

The Court finds Chase's reading of the FCRA erroneous, but reasonable. In implementing the FCRA, "Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." *Saunders*, 526 F.3d at 148. Here, Ms. Gunn does not allege that Chase reported inaccurate information, but that Chase's reporting was incomplete because it failed to include Ms. Gunn's Consent Judgment and mark her account as "disputed." ECF No. 105, at 23–26. While Chase did not report the Consent Judgment to the CRAs, it did accurately report Ms. Gunn's decreased balance and the date of her last payment every time she filed a dispute. *See* ECF No. 94, at 12; *compare* ECF No. 105-6, *with* ECF No. 105-8, *and* ECF No. 105-10, *and* ECF No. 105-12. Ms. Gunn argues that this is misleading because a credit report user "would have to obtain two or more credit reports, sufficiently spaced apart in time, to determine that the balance is incrementally being reduced." ECF No. 105, at 15. While that is true, it is at worst a careless violation. *See Safeco*, 551 U.S. at 69. Since 15 U.S.C. § 1681s-2(b)(1) is silent as to what omissions are considered as misleading, Chase could have reasonably believed that it accurately reflected the status of Ms. Gunn's payments by reporting her current balance and her last payment date. *Id.* at 70 ("Given this dearth of guidance and

the less-than-pellucid statutory text, Safeco's reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability.") As this Court has previously held, "the FCRA does not require perfection, only a reasonable response." *Beachley v. PNC Bank, Nat. Ass'n*, 10-CV-1774, 2011 WL 3705239, at *3 (D. Md. Aug. 22, 2011).

Nor does Chase's failure to mark Ms. Gunn's account as "disputed" rise to the level of reckless disregard. This Court has held that not all kinds of disputes trigger a reporting requirement under the FCRA. *Alston*, 2025 WL 2784705 at *10. Only "meritorious" disputes that are "'misleading in such a way and to such an extent that it can be expected to have an adverse effect'" on "'how one interprets [Plaintiff's] creditworthiness'" must be marked. *Id.* (quoting *Saunders*, 526 F.3d at 150; *Sherman v. Sheffield Fin., LLC*, 627 F. Supp. 3d 1000, 1012 (D. Minn. 2022)). Regardless of whether Chase's reporting was correct, it was reasonable for Chase to believe that its reporting would not have an adverse effect on Ms. Gunn's creditworthiness. *See id.* In response, Ms. Gunn has not presented any evidence suggesting that Chase's credit reporting had a direct impact on her credit score. Absent such evidence, the Court finds that Chase's reporting of Ms. Gunn's decreasing balance in conjunction with her last payment date is not so misleading as to alert Chase to expect an adverse effect. *See Alston*, 2025 WL 2784705 at *15 (holding that a failure to mark an account as disputed is "in-line with an 'objectively reasonable' reading of Truist's obligations under the FCRA and in accord with case law exploring the obligation to report bona fide or potentially meritorious disputes"). Because the Court finds Chase's interpretation of the law reasonable, even if erroneous, and Plaintiff has failed to present any evidence as to Defendant's intent being anything more than negligent, the Court concludes that the record does not reflect a dispute of material fact as to Chase's willfulness. Summary judgment is thus warranted in Defendant's favor as to Ms. Gunn's FCRA claim.

### III. Count Two: Defamation

Ms. Gunn also brings a state-law defamation claim against Chase. ECF No. 105, at 29. A district court can "decline to exercise supplemental jurisdiction over a claim . . . [where it] has dismissed all claims over which it has original jurisdiction." 28. U.S.C. § 1367(c)(3). "Whether to exercise supplemental jurisdiction over a claim for which the [Court] does not have original jurisdiction—or, in a removed case, to remand it—is within the court's discretion." *Tyson v. Capital One, N.A.*, 25-CV-1794, 2025 WL 3166795, at *3 (D. Md. Nov. 13, 2025) (citing *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617–18 (4th Cir. 2001)). In exercising this discretion, courts consider "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded by Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025).

This Court declines to continue exercising supplemental jurisdiction over Ms. Gunn's defamation claim. Ms. Gunn's FCRA claim—the only claim over which this Court has original jurisdiction—did not withstand summary judgment. *See* 28 U.S.C. § 1331. Because the remaining defamation claim arises under Maryland state law, to benefit judicial economy and comity, the Court remands it to the Circuit Court for Montgomery County. *See Carnegie-Mellon Univ*, 484 U.S. at 350; *Tyson*, 2025 WL 3166795, at *3.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 94, is GRANTED as to Ms. Gunn's FCRA claim and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 105, is DENIED. Defendant's Motion in Limine regarding Mr. Robert Hall, ECF No. 84, is GRANTED. Plaintiff's defamation claim is remanded to the Circuit Court for Montgomery County for further proceedings. The case shall be closed.

A separate implementing Order shall follow.

Date: September 30, 2026

/s/
Ajmel A. Quereshi
U.S. Magistrate Judge